**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DIFF SCALE OPERATION RESEARCH, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 19-2109-LPS-CJB |
| MAXLINEAR, INC., and EXAR CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

In this patent infringement action filed by Plaintiff DIFF Scale Operation Research, LLC ("Plaintiff") against Defendants MaxLinear, Inc. and Exar Corporation (collectively, "Defendants"), pending is Defendants' motion to dismiss Counts I and II of Plaintiff's Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 10) For the reasons set out below, the Court recommends that Defendant's Motion be GRANTED without prejudice.

**I.   BACKGROUND**

Plaintiff filed its Complaint on November 7, 2019, in which it alleges that Defendants infringe two different patents. (D.I. 1) In Count I of the Complaint, Plaintiff alleges direct, induced and willful infringement of claim 21 of United States Patent No. 7,881,413 ("the '413 patent") and in Count II of the Complaint, Plaintiff alleges direct, induced and willful infringement of claim 28 of United States Patent No. 6,664,827 ("the '827 patent"). (*Id*. at ¶¶ 36-84) Defendants filed the Motion on January 31, 2020, (D.I. 10), which has been referred to the Court for resolution by Chief United States District Judge Leonard P. Stark, (D.I. 6). Briefing on the Motion was completed on February 20, 2020. (D.I. 15)

## II.     STANDARD OF REVIEW

The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.     DISCUSSION

The Court begins (and ends) its analysis here by assessing the adequacy of the

Complaint's allegations of direct infringement of the '413 and '827 patents.[1] In order to adequately allege direct infringement under the circumstances at issue here,[2] Plaintiff needs to have pleaded facts that plausibly indicate that Defendants' accused products practice each of the limitations asserted in the relevant claims. *See Modern Telecom Sys., LLC v. TCL Corp.*, Civil Action No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017); *Raindance*

---

[1] Defendants also raise separate arguments challenging the adequacy of Plaintiff's induced and willful infringement allegations for both the '413 and '827 patents. (*See* D.I. 11 at 9-12) However, allegations of induced and willful infringement are predicated on the plausible assertion that the defendant has directly infringed the patents-in-suit. *See Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018); *Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15-871-LPS, 2016 WL 3748772, at *2-3 (D. Del. July 12, 2016). Below, the Court finds that Plaintiff has failed to plausibly assert allegations of direct infringement. As a result, the Court will be recommending that the relevant claims of induced and willful infringement also be dismissed. It thus need not separately assess Defendants' arguments as to induced or willful infringement.

[2] This is not a situation, like that in *Disc Disease Solutions Inc. v. VGH Solutions., Inc.*, 888 F.3d 1256 (Fed Cir. 2018), where the plaintiff does not need to rely on a narrative articulation of how the accused products plausibly infringe the elements of the claims. *See Super Interconnect Techs. LLC v. HP Inc*., Civil Action No. 19-0169-CFC, 2019 WL 6895877, at *2 n.3 (D. Del. Dec. 18, 2019). In *Disc Disease*, the United States Court of Appeals for the Federal Circuit reversed a district court's dismissal of the plaintiff's complaint, where the district court had found that the complaint "did not satisfy the *Iqbal/Twombly* plausibility pleading standard[.]" *Disc Disease*, 888 F.3d at 1259. Specifically, the Federal Circuit ruled that the plaintiff had provided the defendant "fair notice of infringement of the asserted patents" where: (1) the case involved "a simple technology"; (2) the asserted patents were attached to the complaint; (3) the complaint specifically identified the accused products, and attached photos of the products as exhibits; and (4) the complaint alleged that the accused products "meet each and every element of at least one claim of [the plaintiff's] patents." *Id.* at 1260 (internal quotation marks and citation omitted). The patent claims at issue in *Disc Disease* were directed to an apparatus and method that were not unduly complex: "an air injectable band with a rigid panel worn around the waist[, that when] inflated [] expands vertically to provide traction to the spine of the user to relieve back pain" and "a method of manufacturing a wrinkled band by adhering an overlapped sheet creating an inner space and adhering a stretched elastic band above and below the inner space." *Id.* at 1257-58. Here, in contrast, the patents-in-suit concern subject matter that is much more technologically sophisticated than that in *Disc Disease*. And here, Plaintiff included no photographs of the accused products. It did list a few features that those products are alleged to have, (D.I. 1 at ¶¶ 41-44, 66-72), but the Court does not understand (and Plaintiff's briefing unfortunately did not explain) why the presence of those features help render it plausible that the limitations of the claims are met.

*Techs., Inc. v. 10x Genomics, Inc.*, Civil Action No. 15-152-RGA, 2016 WL 927143, at *2-3 (D. Del. Mar. 4, 2016). After all, if after reading a complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of an asserted claim of a patent-in-suit, then it cannot be plausible that the accused infringer actually infringes that patent claim. *Modern Telecom Sys.*, 2017 WL 6524526, at *2 (citing cases).

Count I of the Complaint alleges that Defendants' accused products[3] directly infringe claim 21 of the '413 Patent. (D.I. 1 at ¶¶ 36-52) That claim recites a "machine-readable medium having instructions stored thereon capable of causing a processor to perform a method of generating a timing signal," with the method comprising certain steps. ('413 patent, col. 21:41-52) When it comes to alleging that the accused products infringe the claim, the Complaint largely "parrot[s] back the language of the[ respective] claim elements and then states that the accused product" meets those limitations. *N. Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017). In fact, the Complaint's key direct infringement allegations are merely a line-for-line recitation from the asserted patent claim, (D.I. 11 at 6), as shown below:

| **Claim 21 of the '413 Patent** | **DIFF's Complaint Allegations** |
|---|---|
| **21.** A machine-readable medium having instructions stored thereon capable of causing a processor to perform a method of generating a timing signal, the method comprising: *generating the timing signal from a reference clock signal in a phase locked loop*; | ¶ 48. On information and belief, the MaxLinear '413 Products comprise a system for *generating a timing signal from a reference clock signal in a phase locked loop*. |
| *monitoring a status message received from a source of the reference clock signal indicative of a quality level of the reference* | ¶ 49. On information and belief, the MaxLinear '413 Products include functionality for *monitoring a status message* |

---

[3] More specifically, Plaintiff alleges that Defendants' XRT91L33, XRT91L31, XRT83VSH38, XRT83VSH316, and MXL7213 products infringe both patents. (D.I. 1 at ¶¶ 38, 61)

| | |
|---|---|
| *clock signal*; and | *received from a source of the reference clock signal indicative of a quality level of the reference clock signal.* |
| *placing the phase locked loop in a holdover condition if the quality level indicated by the status message is below a target level*; | ¶ 50. On information and belief, the MaxLinear '413 Products are a system containing functionality for *placing the phase locked loop in a holdover condition if the quality level indicated by the status message is below a target level.* |
| wherein the method is *performed in the order presented*. | ¶ 51. The MaxLinear '413 Products comprise a system for *performing the elements in a proscribed order*. |

('413 patent, col. 21:41-51 (emphasis added); D.I. 1 at ¶¶ 48-51 (emphasis added))

The allegations of direct infringement of the '827 Patent in Count II of the Complaint are similar. (D.I. 1 at ¶¶ 60-78) Asserted claim 28 of the '827 Patent claims a "machine-readable medium having instruction stored thereon that cause a processor to perform a method" with the method comprising certain steps. ('827 patent, col. 20:1-14) In alleging that the accused products infringe the claim, Count II simply recites the wording of these claimed steps and then just states that the accused product performs such steps, (D.I. 11 at 7), as shown below:

| **Claim 28 of the '827 Patent** | **DIFF's Complaint Allegations** |
|---|---|
| **28**. A machine-readable medium having instruction stored thereon that cause a processor to perform a method, the method comprising: *sampling values of an error signal*, *wherein the error signal is indicative of a phase relationship between a reference clock signal and a feedback signal*; | ¶ 73. On information and belief, the MaxLinear '827 Products contain functionality for *sampling values of an error signal*. ¶ 74. On information and belief, the MaxLinear '827 Products contain functionality for *sampling an error signal where the error signal is indicative of a phase relationship between a reference clock signal and a feedback signal*. |
| *monitoring the sampled error signal* | ¶ 76. On information and belief, the '827 |

5

| | |
|---|---|
| *values for a step change in the phase difference between the reference clock signal and the feedback signal*; and | Products comprise a system for *monitoring the sampled error signal values for a step change in the phase difference between the reference clock signal and the feedback signal*. |
| *recentering a phase comparator if a step change in the phase difference between the reference clock signal and the feedback signal is detected.* | ¶ 77. On information and belief, the '827 Products include functionality for *recentering a phase comparator if a step change in the phase difference between the reference clock signal and the feedback signal is detected.* |

('827 patent, col. 20:1-14 (emphasis added); D.I. 1 at ¶¶ 73-77 (emphasis added))

In light of the claimed technology at issue, the patentee cannot meet its obligation to assert a plausible claim of direct infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim limitation, and then flatly stating —without more—that Defendants' accused products have or perform such a limitation. *See N. Star Innovations*, 2017 WL 5501489 at *2. That amounts to nothing more than stating: "Your product infringes my patent claim." There needs to be something set out beyond a legal conclusion—i.e., some *facts* alleged that show why it is *plausible* that the products infringe. *Id.*; *see also SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017). Plaintiff must have some reason why it thinks it is plausible that Defendants products actually infringe these two claims; it would have to, in order for its attorneys to have a sufficient basis to bring the Complaint in the first place. *SIPCO, LLC*, 230 F. Supp. 3d at 353. It need "not allege everything it has" at this stage, but it just has to explain to the Court why what it has pleaded demonstrates that its belief is plausible. *Id.*; *see also Super Interconnect Techs. LLC v. HP Inc.*, Civil Action No. 19-0169-CFC, 2019 WL 6895877, at *2 (D. Del. Dec. 18, 2019) (same).

In its briefing, Plaintiff noted that in the Complaint, it cited to datasheets and other materials that describe the accused products. Plaintiff asserts that those documents "contain

6

detailed information connecting the claims to the accused products." (D.I. 14 at 5-6 (citing D.I. 1 at ¶¶ 55 n.15 & 81 n.16)) If that is so, all Plaintiff had to do in its briefing was explain this to the Court. But for whatever reason, Plaintiff did not include these documents along with its answering brief, nor did it explain *why* they render its allegations plausible. (D.I. 15 at 2)

The Court thus cannot understand how the Complaint adequately alleges direct infringement. And for that reason, it recommends that the Motion be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED.

Plaintiff requested leave to amend should the Court grant any portion of the Motion. (D.I. 14 at 16) Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found any of Plaintiff's claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal be without prejudice and that Plaintiff be given leave to file a further amended complaint addressing the deficiencies outlined above. The Court also recommends that if the District Court affirms its decision herein, Plaintiff be given 14 days to file such an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: May 7, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE